Filed 6/4/24  Khartri v. Fox, Shjeflo, Hartley & Babu, LLP CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PRADEEP KANTILAL KHATRI, et al., | |
| Plaintiffs and Respondents, | A164829 |
| v. | |
| FOX, SHJEFLO, HARTLEY & BABU, LLP, et al., | (Alameda County Super. Ct. No. RG20083271) |
| Defendants and Appellants. | |
| PRADEEP KANTILAL KHATRI, et al., | |
| Plaintiffs and Respondents, | A164883 |
| v. | |
| RAJESHKUMAR KANTILAL KHATRI, | (Alameda County Super. Ct. No. RG20083271) |
| Defendant and Appellant. | |

This is the latest lawsuit arising out of the decades-long dispute between Rajeshkumar Khatri (Roger) and Pradeep Khatri (Peter), two brothers, over division of family assets.  Their mother, Vidyagauri Kantilal

1

Khatri (Vidya),[1] died in 2013 and left all of her assets to Peter. In a decision we refer to as *Khatri III* (*Khatri v. Khatri* (Super. Ct. San Mateo County, 2016, No. PRO123880), Roger contested Vidya's will and other testamentary documents, claiming lack of testamentary capacity and undue influence among other claims. Following a 16-day bench trial in San Mateo County Superior Court, the court found in favor of Peter and awarded him attorneys' fees and costs based upon Code of Civil Procedure sections 128.5 and 2033.420.[2] In this court's prior opinion (*Estate of Khatri* (Apr. 28, 2020, A150546) [nonpub. opn.]), we affirmed the dismissal of Roger's contest with prejudice and the order granting Peter's motion for attorneys' fees under section 2033.420, which awarded Peter $865,559.25 in fees plus $138,621.55 in costs. (*Estate of Khatri, supra*, A150546.) We reversed the order granting Peter's motion for attorneys' fees under section 128.5 on the basis that section 128.5 does not apply to actions filed prior to January 1, 2015. Roger's contest was filed in December 2013. (*Estate of Khatri, supra*, A150546.)

Peter and his wife, Kokila Pradeep Khatri, filed a malicious prosecution complaint against Roger and his attorneys: Fox, Shjeflo, Hartley & Babu, LLP; Walter E. Shjeflo; Michael A. Fox; and Sean P. Riley.[3] Roger and the attorney defendants separately filed special motions to strike the complaint under section 425.16, the anti-SLAPP statute. The trial court

---

[1] As we did in the prior two appeals involving the Khatri brothers, we adopt the parties' convention, and intend no disrespect, referring to Rajeshkumar Khatri as Roger; to Pradeep Khatri as Peter; and to their mother, Vidyagauri Khatri, as Vidya.

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[3] We refer to Fox, Shjeflo, Hartley & Babu, LLP, Walter E. Shjeflo, Michael A. Fox, and Sean P. Riley collectively as the attorney defendants. We refer to the attorney defendants and Roger collectively as defendants.

denied the motions to strike, finding that Peter made a prima facie showing that he would probably prevail on the malicious prosecution claims.[4] Roger and the attorney defendants appealed separately, and the appeals were consolidated.

## FACTUAL AND PROCEDURAL BACKGROUND

Our prior opinion (*Estate of Khatri, supra*, A150546) summarizes the background of the disputes between Roger, Peter, and Vidya as follows:

"A. *Khatri I*

"In 2003, Peter, individually and on behalf of Vidya, sued Roger, seeking to rescind agreements regarding family income properties and to dissolve a family partnership established in the 1980's, which owned six income properties.[5]  Vidya, separately represented by attorney Albert Martin, cross-complained against her sons, seeking to rescind certain agreements that divided the properties and provided her with a $1,500-per-month income.  The trial court entered an interlocutory judgment finding Roger had a 50-percent ownership interest and a 50-percent income interest in the partnership, Vidya had a 50-percent ownership interest and a 25-percent income interest, and Peter had a 25-percent income interest.  The

---

[4] The trial court granted Roger's motion in part, as to Kokila only, on the basis that she was not named in her individual capacity in the underlying will contest (*Khatri III*) and therefore could not assert a claim for malicious prosecution.  Although the attorney defendants made the same arguments regarding Kokila, the trial court's order on the attorney defendants' motion to strike denied the motion in full and did not address the issue of Kokila's ability to maintain a malicious prosecution action.  We address this issue *post*, in part V.

[5] Roger cross-complained against Peter and Vidya, seeking dissolution of partnership and alleging breach of contract, breach of fiduciary duty, conversion, fraud, declaratory relief, common counts, and interference with contract and prospective economic advantage.

court rescinded the agreements regarding the partnership assets, ordered the partnership to be dissolved, and appointed a referee to oversee the dissolution. The trial court found that Vidya's sons 'clearly unduly influenced her behavior—both Peter and Roger at various times instructed her to sign documents, sometimes documents they themselves prepared without adequate explanation of either the content of the document or her statutory rights . . . . There was a resulting benefit to them and a detriment to her. [Citation.] Mother, by these transactions was "relieved" . . . of millions of dollars in assets and support consistent with the lifestyle of the family. [¶] Accordingly, judgment enters for Mother on the rescission cause of action as Mother's consent to the agreements was given by undue influence.' The court later adopted most of the referee's recommendations and ordered four properties, with a combined appraised value of $10.275 million, to be allocated and transferred to Roger, and two properties, with a combined appraised value of $9,374,285, to be allocated and transferred to Vidya. Roger was also ordered to pay Vidya and Peter $783,398.50. Roger appealed, and we affirmed in an opinion issued on June 9, 2011. (*Khatri v. Khatri* (June 9, 2011, A128718, A129175) [nonpub. opn.].)

"**B. *Khatri II***

"In 2012, Peter and Vidya (through Peter) sued Roger for elder abuse. On November 7, 2014, the court granted Roger's motion for summary judgment, finding he was entitled to judgment based on his 'affirmative defenses of res judicata and/or collateral estoppel or, in the alternative, due to the time-bar of the applicable statute of limitations and/or the plaintiff's

4

failure to file a compulsory claim in earlier litigation among and between the Khatri family members.'[6]  This case was not appealed.

"**C. *Khatri III***

"After Vidya's death, in November 2013, Peter filed a petition for probate of will and for letters testamentary and a petition to administer estate.  Roger filed a contest and objection to probate.  Roger's Fifth Amended Contest and Grounds of Objection to Probate of Purported Will(s) sought to invalidate 16 inter vivos transfers of property, three powers of attorney, six trust transactions, and six wills and codicils on the grounds of (1) lack of capacity; (2) undue influence, fraud, and concealment, duress, menace, coercion, mistake, or as to disqualified donees; and (3) lack of due execution. The trial court's statement of decision explains:  'The gist of the Thirty-One Causes of Action . . . is that every Deed executed by Vidya during the period 2002 to 2014, every Transfer of Personal Property by Vidya, every power of attorney executed by Vidya during the period 2001 to 2003, and every Will or Codicil executed by Vidya during the period 2001 to 2012 is invalid due to lack of capacity, undue influence (including Fraud, and Concealment, Duress, Menace, Coercion, Mistake, or distribution to Disqualified Donees), or lack of due execution, and that Vidya died intestate.  Roger's Fifth Amended Contest seeks to impose, on behalf of Vidya's estate, a constructive trust over all property transferred by Vidya during her lifetime, so that all such property can be divided equally between Roger and Peter, Vidya's sole intestate heirs.'

---

6 [Fn. 3 in quoted material.]  The court's order includes these concluding comments:  'As to the foregoing legal conclusions that it has reached, the Court also believes them to be reasonable and appropriate in light of the manifest *Bleak House* aura of these two *Khatri v. Khatri* cases— bearing the hallmark of a potentially endless family feud, that has already gone on for years, that begs to be quelled before any more litigation "blood" is spilled.'

5

"Following a 16-day bench trial, the court found against Roger on all claims and found 'clear and convincing evidence that each of the 31 documents is NOT invalid due to lack of capacity, undue influence (including fraud, concealment, duress, menace, coercion, mistake, and transfer to disqualified donee) or lack of due execution.' The court found Roger's claims were 'frivolous in that he proceeded to trial with negligible evidence of lack of capacity at the time of execution, zero evidence of undue benefit, and in the face of overwhelmingly clear and convincing evidence that the Thirty-One documents in question were NOT invalid due to lack of capacity, undue influence . . . or lack of due execution . . . .' The tentative statement of decision stated, 'Peter appears to be entitled to Costs and Attorneys Fees . . . incurred in connection with Denials of Requests for Admissions proved false at trial,' and ordered Peter to file a motion for costs and attorneys' fees pursuant to section 2033.420, subdivisions (a) and (b), and 'a motion for any other Costs or Attorneys Fees that Peter contends he is entitled to.'

"Peter filed two motions for attorneys' fees and costs, one under section 2033.420 seeking $865,559.25 in fees and $138,621.55 in costs, and one under section 128.5 seeking $1,497,680.75 in fees and $346,874.19 in costs. Roger opposed both motions. The court held a hearing on the attorneys' fees motions and on Roger's objections to the tentative statement of decision. The court overruled Roger's objections, adopted the tentative statement of decision, and granted both of Peter's attorneys' fees motions. On December 30, 2016, the court issued an order and judgment granting both motions and awarding a total of $1,497,680.75 in fees and $346,874.19 in

6

expenses, which were the amounts Peter incurred for the entire action.[7] On the same day, the court entered judgment denying and overruling each of Roger's causes of action and dismissing the fifth amended contest with prejudice." (*Estate of Khatri, supra*, A150546.)

Our prior decision affirmed the trial court's dismissal of Roger's fifth amended contest with prejudice and the order awarding Peter attorneys' fees of $865,559.25 and costs of $138,621.55 under section 2033.420. (*Estate of Khatri, supra*, A150546.) We reversed the order granting Peter's motion for attorneys' fees under section 128.5 on the basis that section 128.5 does not apply to actions filed prior to January 1, 2015. Roger's contest was filed in December 2013. (*Estate of Khatri, supra*, A150546.)

## D.    Peter's Malicious Prosecution Complaint[8]

On December 17, 2020, Peter and Kokila filed a complaint against Peter's brother Roger and the attorney defendants alleging malicious prosecution as to the litigation in *Khatri III*. The complaint summarizes the background of the family disputes and prior litigation. It alleges the attorney defendants represented Roger in *Khatri I* and *Khatri III*. As to each of the defendants, the complaint alleges no reasonable person or attorney would have believed there were reasonable grounds to contest all of Vidya's estate

---

[7] [Fn. 4 in quoted material.] The trial court granted both attorneys' fees motions, finding that Peter is entitled to fees of $855,559.25 and costs of $138,621.55 under section 2033.420 for amounts incurred from August 27, 2015, to December 16, 2015, and that he was entitled to fees of $1,497,680.75 and costs of $346,874.19 for costs under section 128.5, representing fees and costs incurred during the entire action. However, because the awards are not cumulative, the total amount awarded was fees of $1,497,680.75 and costs of $346,874.19.

[8] Although both Peter and Kokila are named plaintiffs in the malicious prosecution complaint, we refer to Peter's claims and arguments as a shorthand reference.

planning documents from 2004 to 2013 based on lack of capacity or undue influence.

Regarding the lack of capacity allegations Roger asserted in *Khatri III*, the complaint alleges that neither Roger nor the attorney defendants who deposed Vidya in 2004 in *Khatri I* and cross-examined her in 2005 had personal experience of Vidya's behavior suggesting a lack of testamentary capacity. Further, no other witnesses who had personal interactions with Vidya could testify to facts supporting a lack of testamentary capacity. Peter further alleges that even Roger's expert neuropsychologist, who never met Vidya, provided no opinion as to Vidya's lack of testamentary capacity prior to 2008.

Regarding the undue influence allegations Roger asserted in *Khatri III*, the malicious prosecution complaint alleges that the defendants knew that Roger had already been awarded one-half of the family assets in *Khatri I* and, thus, there was no basis to claim that Vidya's transfer or bequest of her assets to Peter was " 'undue' " or inequitable. Further, the defendants were aware that Roger angered and alienated Vidya by his actions, including defrauding her regarding a $900,000 loan taken against a Redwood City motel, suing her for fraud in *Khatri I*, and rejecting the Gujarati custom that he live in his mother's house until her death. Thus, there was no basis for Roger's claim that Vidya's decision to leave her assets to Peter was the result of undue influence.

The complaint further alleges that Roger filed the underlying will contest with malice and for an improper purpose. Specifically, Roger was dissatisfied with the judgment in *Khatri I* and he wanted the Belmont residence. He allegedly believed he could force Peter into agreeing to give Roger at least three-quarters of the family assets in order to avoid the

8

expense of defending the will contest. The attorney defendants allegedly knew of Roger's ongoing resentment toward Peter and Roger's dissatisfaction with the *Khatri I* judgment. They allegedly filed the unmeritorious, underlying will contest on Roger's behalf in order to collect legal fees.

## E. Anti-SLAPP Motions

Roger and the attorney defendants each filed special motions to strike the malicious prosecution complaint under section 425.16, the anti-SLAPP statute. The trial court denied the motions, finding that the plaintiffs met their burden of presenting a prima facie showing that they will probably prevail on their malicious prosecution claim. The trial court found that Peter presented sufficient evidence to support a prima facie case, including the findings in *Khatri III* regarding Vidya's testamentary capacity and Roger's claim of undue influence, which applied based upon the doctrine of issue preclusion.[9] It further found that the attorney defendants, who represented Roger in prior disputes with Vidya and Peter, "likely knew that Roger's challenges to the disposition of the assets in the trust and Vidya's direct bequests to Peter had no evidentiary basis" and that Peter made the required prima facie showing that "no reasonable attorney would have believed that Roger's numerous claims were tenable."

## DISCUSSION

### I. *Anti-SLAPP Statutory Framework*

Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or

---

[9] The Supreme Court has stated that although the term "collateral estoppel" has been used to refer to "issue preclusion," it would use the term "issue preclusion." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–825.) We will do the same, except where case law uses the term "collateral estoppel."

9

free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on that claim." (§ 425.16, subd. (b)(1).) The statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)

Anti-SLAPP motions are decided through a two-step process. First, the court determines whether the challenged lawsuit arises from protected activity. If the first step is satisfied, the court then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 (*Jarrow*).) "To meet his burden, the plaintiff ' "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]' " (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1104–1105 (*Cole*).)

On appeal, we review the trial court's order denying an anti-SLAPP motion de novo. (*Cole, supra*, 206 Cal.App.4th at p. 1105.) We apply the same two-step analysis as the trial court. "We look at the pleadings and

declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence ' "only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' " (*Ibid.*) To defeat an anti-SLAPP motion, a plaintiff need only establish that his or her claim has " 'minimal merit' . . . ." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).) In other words, the plaintiff's claim must meet " 'a minimum level of legal sufficiency and triability' [citation]." (*Jarrow, supra*, 31 Cal.4th at p. 738.)

The parties agree that the first prong of the section 425.16 analysis is satisfied. (*Jarrow, supra*, 31 Cal.4th at p. 733.) We therefore focus on the second prong and consider whether Peter has demonstrated the requisite probability of prevailing on the merits of his malicious prosecution claim.

## II. *Prima Facie Requirements for Malicious Prosecution*

The elements of a malicious prosecution claim are that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. (*Soukup, supra*, 39 Cal.4th at p. 292.) Here, it is undisputed that *Khatri III* was commenced by Roger and was pursued to a legal determination in Peter's favor. Therefore, in determining whether Peter has presented a prima facie case demonstrating a probability of prevailing on the malicious prosecution claim, we focus on the second and third elements of a malicious prosecution claim.

"The question of probable cause is 'whether as an objective matter, the prior action was legally tenable or not.' (*Sheldon Appel Co. v. Albert & Oliker* [(1989)] 47 Cal.3d [863,] 868.) 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is

11

untenable under the facts known to him. [Citation.] 'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.' [Citation.] Probable cause, moreover, must exist for every cause of action advanced in the underlying action. '[A]n action for malicious prosecution lies when but one of alternative theories of recovery is maliciously asserted . . . .' [Citations.]" (*Soukup, supra*, 39 Cal.4th at p. 292.) A malicious prosecution claim may also be based upon the continuing of an already filed lawsuit without probable cause. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969 (*Zamos*).) The fact that a prior action was ultimately found to lack merit does not establish a lack of probable cause. (*Jarrow, supra*, 31 Cal.4th at p. 743, fn. 13.) Instead, the question to be decided in the malicious prosecution case is whether any reasonable attorney would have thought the underlying claims were tenable. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1402.)

" 'The "malice" element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.' [Citations.] Malice 'may range anywhere from open hostility to indifference. [Citations.] Malice may also be inferred from the facts establishing lack of probable cause.' " (*Soukup, supra*, 39 Cal.4th at p. 292.) "Malice may be inferred from circumstantial evidence, such as the defendants' lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose. [Citation.] This additional proof may consist of evidence that the prior case was knowingly brought without probable cause or was

12

brought to force a settlement unrelated to its merits.  A defendant attorney's investigation and research also may be relevant to whether the attorney acted with malice." (*Cole, supra*, 206 Cal.App.4th at p. 1114.)  Malice can also be inferred "when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.)

### III. *Prima Facie Showing that Defendants Lacked Probable Cause to Pursue Roger's Will Contest in Khatri III*

Roger's fifth amended contest and grounds for objection to probate ("will contest") alleged 31 causes of action seeking to invalidate 16 inter vivos transfers of property, three powers of attorney, six trust transactions, and six wills and codicils on the grounds of (1) lack of capacity; (2) undue influence, fraud, concealment, duress, menace, coercion, mistake, or as to disqualified donees; and (3) lack of due execution.

As discussed *ante*, in order to defeat the anti-SLAPP motions, Peter must establish a probability of prevailing by demonstrating that his malicious prosecution complaint is legally sufficient and "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.)  However, Peter need only demonstrate that one of the 31 causes of action asserted by Roger was either initiated or continued without probable cause. (*Soukup, supra*, 39 Cal.4th at p. 292.)

Roger's will contest asserted that each of Vidya's testamentary documents was invalid due to the undue influence of Peter.  Welfare and Institutions Code section 15610.70 defines undue influence as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and *results in inequity*." (Italics added.) Section 15610.70 further lists various factors that shall be considered in

13

determining whether a result was produced by undue influence, including the vulnerability of the victim; the influencer's apparent authority or relationship with the victim; and the equity of the result, which may include evidence of "the economic consequences to the victim, any divergence from the victim's prior intent or course of conduct or dealing, the relationship of the value conveyed to the value of any services or consideration received, or the appropriateness of the change in light of the length and nature of the relationship." (Welf. & Inst. Code, § 15610.70, subd. (a)(1)–(4).)  To set aside a will on the grounds of undue influence, " '[evidence] must be produced that pressure was brought to bear directly on the testamentary act . . . .  Mere general influence . . . is not enough; it must be influence used directly to procure the will and must amount to *coercion* destroying the free agency on the part of the testator.' " (*Estate of Mann* (1986) 184 Cal.App.3d 593, 606.) Further, a presumption of undue influence arises when there is evidence of (1) a confidential relationship between the decedent and the beneficiary, (2) the beneficiary's active participation in procuring the execution of the will, and (3) undue benefit to the beneficiary.  (*Ibid.*)

As we explained in *Estate of Khatri, supra*, A150546:  "The issue is not whether Peter profited from Vidya's disposition of her estate but whether his profit was 'undue.'  'The determination of this issue is based on a qualitative assessment of evidence, not a quantitative one.  "To determine if the beneficiary's profit is 'undue' the trier must necessarily decide what profit would be 'due.'  These determinations cannot be made in an evidentiary vacuum.  The trier of fact derives from the evidence introduced an appreciation of the respective relative standings of the beneficiary and the contestant to the decedent in order that the trier of fact can determine which party would be the more obvious object of the decedent's testamentary

14

disposition." ' (*Conservatorship of Davidson* [(2003)] 113 Cal.App.4th [1035,] 1060–1061.)"

We focus our analysis on whether Roger's claims of undue influence were supported by probable cause.

## A. Peter Can Rely on Prior Findings in *Khatri III* to Support His Prima Facie Showing that Defendants Lacked Probable Cause

Peter argues that the judgments and rulings in *Khatri III*, which were affirmed in *Estate of Khatri, supra*, A150546, are sufficient to meet his burden to demonstrate a prima facie case that the defendants lacked probable cause to pursue the will contest. Relying on *Key v. Tyler* (2019) 34 Cal.App.5th 505 (*Key*), Peter argues that under the principles of issue preclusion, these prior findings, affirmed on appeal, "are sufficient to establish at least a *prima facie* case that [defendants] lacked probable cause to try Roger's Contest." Specifically, he claims that the *Khatri III* findings, including that Roger's will contest was " 'frivolous,' " that Roger's own evidence established by clear and convincing evidence that none of the testamentary documents was invalid due to undue influence, and that Roger " 'utterly failed to provide even a scintilla of credible evidence [of] the element of undue benefit,' " are sufficient to support Peter's prima facie case that Roger pursued his will contest without probable cause.

"Collateral estoppel (also known as issue preclusion) prevents relitigation of previously decided issues. [Citation.] Issue preclusion applies ' "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." ' [Citations.] . . . [¶] The identical issue requirement for issue preclusion addresses whether identical factual allegations are at stake, 'not whether the ultimate issues or

15

dispositions are the same.' [Citation.] And the ' "necessarily decided" ' prong means only that 'the issue not have been "entirely unnecessary" to the judgment in the initial proceeding.' [Citation.]" (*Key, supra*, 34 Cal.App.5th at p. 534.)

The defendants argue that issue preclusion does not apply because the issue in *Khatri III* was whether there was clear and convincing evidence of lack of capacity and undue influence whereas in Peter's malicious prosecution case the issue is whether the defendants had probable cause to bring the will contest. They also rely on *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548 to assert that the findings in the *Khatri III* decision are inadmissible hearsay that cannot be considered for the truth.[10]

---

[10] *Sosinsky v. Grant, supra*, 6 Cal.App.4th 1548, did not involve an anti-SLAPP motion. Instead, it was an appeal from the grant of a summary judgment motion in favor of defendants in a malicious prosecution action. (*Id.* at pp. 1553–1554.) The court found that when a court takes judicial notice of court records, it is not taking notice of the truth of the findings. (*Id.* at p. 1565.) "While we have no quarrel with the fact that a judge, after hearing a factual dispute between litigants A and B, may choose to believe A, and make a finding of fact in A's favor, and while we have no quarrel that at some subsequent time it may be proper to take judicial notice *that the judge did in fact make that particular finding* in favor of A, the taking of judicial notice that the judge *made* a particular factual finding is a far cry from the taking of judicial notice that the 'facts' found by the judge must necessarily be the true facts, i.e., must necessarily be 'the truth.' To state this a bit more simply, the taking of judicial notice that the judge believed A (i.e., that the judge ruled in favor of A on a particular factual dispute) is different from the taking of judicial notice that A's testimony must necessarily have been true simply because the judge believed A and not B." (*Ibid.*) We find *Sosinsky* distinguishable because it "expressly note[d] that in the present case no attempt was made by the appellants to apply the doctrine of collateral estoppel . . . ." (*Id.* at p. 1566.) In addition, *Sosinsky* involved an appeal from a summary judgment decision, rather than the more preliminary question at issue here of whether Peter has made a prima facie showing that defendants lacked probable cause to pursue the will contest in *Khatri III*.

16

We agree with defendants that the ultimate issue in Peter's malicious prosecution action is whether defendants had probable cause to bring the will contest. The *Khatri III* statement of decision did not decide this precise issue. However, the *Khatri III* statement of decision includes factual findings that are relevant to the question of whether the defendants had probable cause to pursue the will contest.

We find *Key, supra*, instructive. *Key* involved underlying probate court litigation between sisters who were beneficiaries of a family trust. (34 Cal.App.5th at p. 509.) Tyler was the trustee. The trust was purportedly amended in 2007 to effectively disinherit Key. (*Ibid.*) In 2011, Key filed a petition seeking to invalidate the amendment on the basis that it was a product of Tyler's undue influence over the decedent. The probate court granted the petition, and the decision was affirmed on appeal. (*Ibid.*) Key then filed a petition to enforce against Tyler the trust's no contest clause, which disinherited beneficiaries who contested the trust or sought to invalidate any of its provisions. (*Id.* at pp. 509, 511.) Key argued that Tyler's defense of the invalid amendment that purported to disinherit Key implicated the no contest clause. (*Id.* at p. 509.) Tyler filed an anti-SLAPP motion, which the probate court granted. (*Id.* at pp. 509–510.)

The Court of Appeal reversed the order granting Tyler's anti-SLAPP motion. (*Key, supra*, 34 Cal.App.5th at p. 510.) It found that Key had adequately demonstrated a likelihood of success under the second step of the anti-SLAPP procedure. (*Ibid.*) The appellate court noted that the probate court held a 17-day trial and then issued a 67-page statement of decision invalidating the amendment based upon Tyler's undue influence. (*Id.* at pp. 510, 513.) The findings of the probate court provided a sufficient basis to conclude that Key had shown a probability of success on her no contest

17

petition. (*Id.* at pp. 510, 523.) To prevail on her no contest petition, Key was required to prove that Tyler lacked probable cause to defend the 2007 amendment. (*Id.* at pp. 528–530.) The Court of Appeal explained that the lack of probable cause element of Key's claim was similar to a plaintiff's burden in malicious prosecution claims. (*Id.* at pp. 529–530.) It then found that certain facts established in the prior probate proceeding were sufficient to support a prima facie case that Tyler defended the 2007 amendment without probable cause to do so. (*Id.* at pp. 526, 531–532.) The Court of Appeal distinguished the *Sosinsky* case on the basis that collateral estoppel, or issue preclusion, applied to certain prior findings of the probate court, which was not an issue addressed in *Sosinsky*. (*Id.* at pp. 531–532.) It applied issue preclusion to identify certain relevant facts established by the probate court's prior decision (including that Tyler actively participated in procuring the 2007 amendment, overcame the decedent's will, and obtained undue benefits under the amendment) and found that they were sufficient to establish at least a prima facie case that Tyler lacked probable cause to defend the amendment. (*Id.* at pp. 536–539.) The appellate court explained that the probate court in the prior proceeding was not asked to decide the issue of probable cause and that the prior factual findings did not establish a lack of probable cause as a matter of law. (*Id.* at p. 539.) However, the established facts were sufficient to support Key's prima facie case that Tyler lacked probable cause. (*Ibid.*) The established facts supported the inferences that Tyler acted intentionally to manipulate the decedent and that the amendment was not the result of the decedent's free will. (*Id.* at pp. 538–539.) "Based on these inferences, a court could find that a reasonable person in Tyler's position would *not* have believed there was a 'reasonable likelihood'

18

that the 2007 Amendment was valid.  These findings are sufficient to meet Key's burden under step two of the anti-SLAPP procedure."  (*Id.* at p. 539.)

### B.  *Khatri III* Findings Supporting Prima Facie Showing that Defendants Lacked Probable Cause to Pursue Undue Influence Claims

The *Khatri III* statement of decision summarizes the evidence presented during the 16-day trial of Vidya's long-standing intent that Roger and Peter share equally in the assets of their parents.  The decision found Roger failed to provide "even a scintilla of credible evidence . . . of undue benefit to Peter . . . ."  There was no "evidence whatsoever that Vidya's efforts to give Peter a share of the family wealth equal to that already conferred on Roger by giving Peter 100% of Vidya's share of the estate constituted an undue benefit."  The decision found every lawyer witness testified about "Vidya's determination and absolute clarity that Roger and Peter were to receive equal shares of the total family fortune."  Other witnesses also testified that Vidya "was adamant that Peter should receive a share of the family wealth equal to that previously provided to Roger and that the mechanism for accomplishing that goal was to give Peter 100% of Vidya's half share of the family wealth."

The decision refers to "the mountain of clear and convincing evidence that Vidya's estate plan was not the product of undue influence" and provides multiple supporting examples, including that the plan to provide equal shares of the family wealth to each brother predated the estrangement between Vidya and Roger; that Vidya was devasted that Roger moved out of the family home and abandoned her and she repeatedly stated that Roger had " 'stabbed her in the heart' "; and that Vidya was upset when the referee in *Khatri I* recommended that Roger be given the Redwood City motel, which had tremendous sentimental value to Vidya, and that Vidya pleaded with

19

Roger and the referee that it be given to her in exchange for a more valuable property but Roger refused to agree. The decision further refers to the disputes between Vidya and Roger in *Khatri I* regarding money Vidya felt Roger "had 'stolen' " from her and Roger's attempts to " 'steal' " her gold bar. The decision references the *Khatri I* judgment, by which Roger was required to pay the loan secured by the Redwood City motel and to reimburse Vidya for money Roger took from certain bank accounts, and Vidya was determined to be the owner of the gold bar. As the trial court found, and this court affirmed, " 'there was clear and convincing evidence that Vidya's determination to give Peter a share of the family fortune equal to that already provided to Roger was not the result of any mysterious aura of influence exerted by Peter, but existed before Peter was in a position to exert influence, and was significantly reinforced by behavior of Roger that had nothing to do with Peter's influence over Vidya.' "

## C. Peter Has Established a Prima Facie Case that His Malicious Prosecution Claim Has at Least Minimal Merit

To defeat defendants' anti-SLAPP motions, Peter must establish that his malicious prosecution claim has at least "minimal merit." (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 539.) We find that Peter has met his burden. As *Key, supra*, explained, although the prior probate court proceedings in that case did not establish a lack of probable cause to pursue the underlying claim as a matter of law, the prior factual findings were sufficient to support a prima facie case of lack of probable cause. (34 Cal.App.5th at p. 539.) Here too the factual findings made in the *Khatri III* statement of decision, discussed *ante*, are sufficient to support at least a prima facie case that the defendants lacked probable cause to pursue

20

the will contest based on undue influence.[11]  We do not suggest that the *Khatri III* findings by themselves are sufficient to prove a lack of probable cause when the malicious prosecution action is tried.  However, at this early stage in the proceeding, when Peter is opposing an anti-SLAPP motion, he may rely upon the *Khatri III* findings as support for his prima facie case that the defendants lacked probable cause to pursue the undue influence claims. (*Gruber, supra*, 48 Cal.App.5th at p. 539.)

In addition to the factual findings in the *Khatri III* statement of decision, Peter also relies upon the *Khatri III* ruling awarding Peter discovery sanctions under section 2033.420, subdivision (a) based on Roger's denial of requests asking him to admit that each contested instrument was executed without undue influence.  The *Khatri III* trial court found that Roger lacked a good faith basis for denying the requests for admissions on August 27, 2015, and awarded Peter attorneys' fees and costs.  It specifically rejected the 14 evidentiary bases that Roger asserted provided him with a good faith and reasonable belief he would prevail on his claims.  The trial court's order states that Roger's "own case-in-chief failed to provide any credible evidence that Vidya ever intended a testamentary outcome other than that her two sons should share equally in the family assets, and failed

---

[11] For the first time in their reply brief, attorney defendants argue that issue preclusion cannot apply to them because they are not in privity with Roger.  This issue was not raised below and is therefore forfeited. (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1489 [party cannot raise new issue not raised below and raised for the first time in reply brief].)  In this case, in which both Roger and the attorney defendants are defendants, and in which the attorney defendants have represented Roger in decades-long litigation against Peter, the factual findings in the *Khatri III* statement of decision, discussed *ante*, are sufficient to support at least a prima facie case that the attorney defendants lacked probable cause to pursue the will contest based on undue influence. (*Key, supra*, 34 Cal.App.5th at p. 539.)

21

to present any evidence that would support a judgment that Vidya ever *changed* her testamentary intent . . . as a result of . . . undue influence . . . . Roger also failed in his case in chief to present evidence that would support a judgment . . . that any of the challenged instruments and deeds effecting a relatively even split of the family assets was the product of any undue influence by Peter or his family.  Nor did Roger ever articulate to the Court a coherent explanation why an equal division of family assets between the two sons, after taking into account the 50% interest in the six partnership properties already owned by Roger at the time of the 1993 Trust could be considered inequitable by Vidya."  This order was affirmed on appeal.  (*Estate of Khatri, supra*, A150546.)[12]  We find that the discovery sanctions award entered against Roger further supports Peter's prima facie case that the defendants lacked probable cause to pursue the will contest based upon alleged undue influence.  (*Key, supra*, 34 Cal.App.5th at p. 531; *Mattel, Inc. v. Luce, Forward Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1190 [sanctions award finding prior action was " ' "without factual foundation" ' " was "evidence that the underlying action was filed without probable cause"].)

In addition to the *Khatri III* rulings, Peter also refers to documentary evidence from 2004 in which Vidya stated that she wanted an equal division of assets and that she was not planning to give the Belmont residence to Roger, as well as a 2002 agreement signed by Roger that begins with the preamble:  "Although most, if not all, assets Vidyagauri owns will ultimately

---

[12] The trial court's order also awarded Peter sanctions under section 128.5.  However, that award was reversed on appeal because section 128.5 does not apply to actions filed prior to 2015.  Roger asserted the same evidentiary bases in opposition to both motions, arguing that they provided him with a good faith belief his claims were not frivolous and a good faith belief he would prevail at trial.

be distributed to her son Peter , . . ." This documentary evidence, which indicates Vidya's intent to ultimately give her share of the family wealth to Peter, also supports Peter's prima facie case that he has a probability of prevailing on the merits by proving that Roger's claims of undue influence were pursued without probable cause. (*Gruber v. Gruber, supra*, 48 Cal.App.5th at p. 539.)

### D. Defendants' Evidence Does Not Defeat, as a Matter of Law, Peter's Showing that Defendants Lacked Probable Cause to Pursue Undue Influence Claims

Having found that Peter has presented evidence sufficient to show a probability of prevailing on the merits by proving that Roger's claims of undue influence were pursued without probable cause, we next consider the evidence presented by defendants to determine if it defeats Peter's showing as a matter of law. (*Cole, supra*, 206 Cal.App.4th at pp. 1104–1105.) We again focus on the undue benefit aspect of Roger's undue influence claims alleged in the will contest. (*Conservatorship of Davidson, supra*, 113 Cal.App.4th at pp. 1060–1061.)

Roger and the attorney defendants each argue there is evidence that Peter unduly benefited from changes to Vidya's estate plan because Peter went from inheriting 50 percent of the family estate in the 1993 Khatri trust to inheriting 100 percent. They assert, without citation to evidence, that it is reasonable to infer that Peter unduly influenced Vidya to alter her prior intent to have Roger and Peter be equal beneficiaries. They further assert that one of Vidya's attorneys explained to her that the 1993 trust conveyed only Kantilal Khatri's interest because Roger already owned 50 percent and that the attorney explained this again in 2000 in connection with a *Heggstad* petition. However, the record citations provided are to the order in *Khatri I* on Peter's "motion to vacate and modify court order re accounting, exchange

23

and offsets regarding properties, accounting and dissolution of partnership" and the 2000 order to transfer real property. Neither order refers to anything Vidya may have been told by her attorney. The final evidence defendants cite to demonstrate that Peter unduly benefited from the testamentary documents is individual and partnership tax returns for 2001 showing that Roger had a 50-percent ownership interest in the family partnership.

The defendants also seek to rely on the *Khatri I* court's order rescinding various documents that sought to divide the family assets on the basis that both Peter and Roger exerted undue influence over Vidya at various times. We are not persuaded that this order, standing alone, is evidence that Peter unduly benefited when Vidya left her estate to Peter in 2013, after Roger received approximately one-half of the family assets based on the *Khatri I* judgment. We also note that the *Khatri I* statement of decision specifically states that mother "amended her revocable trust to leave [the Belmont residence] to Peter, which she had the right to do," and confirmed "Mother and the Khatri Family Trust as sole owners of [the Belmont residence] and Mother's continued control over the asset based on the revocable nature of her trust."

The evidence cited by defendants regarding the alleged undue benefit element does not demonstrate, as a matter of law, that Roger had probable cause to contest the testamentary documents based on undue influence. (*Cole, supra*, 206 Cal.App.4th at pp. 1104–1105.) Notably, much of the evidence defendants reference predates the *Khatri I* litigation, which Peter and Vidya initiated in 2003 and which resulted in a December 27, 2005 judgment dissolving the partnership and an April 9, 2010 order dividing the partnership assets between Vidya and Roger following recommendations of the court-appointed referee. The status of the Roger's ownership interest in

24

the family partnership prior to dissolution does not demonstrate, as a matter of law, that the defendants had probable cause in 2013 to contest the testamentary documents based on undue influence.

## IV. *Prima Facie Case of Malice*

We next address whether Peter has demonstrated a prima facie case of malice. (*Cole, supra*, 206 Cal.App.4th at pp. 1113–1114.) "The malice element of malicious prosecution goes to the defendants' subjective intent for instituting the prior case. [Citation.] Malice does not require that the defendants harbor actual ill will toward the plaintiff in the malicious prosecution case, and liability attaches to attitudes that range ' "from open hostility to indifference. [Citations.]" ' [Citation.] Malice may be inferred from circumstantial evidence, such as the defendants' lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose. [Citation.] This additional proof may consist of evidence that the prior case was knowingly brought without probable cause or was brought to force a settlement unrelated to its merits. [Citation.]" (*Ibid.*) Thus, while malice is not established by a mere lack of probable cause, it can be established by a *knowing* lack of probable cause. (*Cole*, at p. 1114; *Daniels v. Robbins, supra*, 182 Cal.App.4th at p. 226.) "[A] corollary to this rule [is that] malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels, supra*, at p. 226.)

We address the malice issue first with respect to Roger and then as to the attorney defendants.

### A. Malice: Roger

On December 27, 2005, the trial court in *Khatri I* issued its statement of decision. The decision summarized the family's efforts to divide, and

25

resulting disputes over, the family assets, including the partnership income properties, the Belmont residence, and a Standard Chartered Bank account in London. Among other findings, the statement of decision found that following a family argument, Roger moved from the Belmont residence to Castro Valley and mother refused Roger's request to move with him. This ended the family's cultural tradition of the eldest son providing care for the mother. Roger had no contact with Vidya after his move. Prior to moving, Roger took out a loan against the Redwood City motel for $900,000 and later transferred the $900,000 loan proceeds to an individual bank account in his name only, at ABN AMRO Bank in London. Mother amended her revocable trust to leave the Belmont residence to Peter. Roger claimed that he owned a gold bar that was in a safe at the Belmont residence. Mother testified that the gold bar was her property. She also testified that Roger made her sign paperwork for the $900,000 loan on the Redwood City motel. "Mother also was clear that she has great anger toward Roger for moving from Belmont and abdicating his duty to care for her."

As we explained *ante*, the *Khatri I* court rescinded various agreements between the parties regarding the division of property, ordered the partnership dissolved, and appointed a referee to oversee the dissolution. It also entered judgment against Roger on his request for return of the gold bar; "confirm[ed] Mother and the Khatri Family Trust as sole owners of [the Belmont residence] and Mother's continued control over the asset based on the revocable nature of her trust"; and found that "Mother is the owner of all the funds in the Standard Chartered Bank account as the surviving spouse of Kantilal. Roger is ordered to account for the funds while in his control and turn over all evidence of ownership of the account to Mother."

26

The *Khatri I* trial court later adopted most of the referee's recommendations to divide the partnership income properties equally between Roger and Vidya. In 2011, the *Khatri I* judgment was affirmed on appeal. (*Khatri v. Khatri, supra*, A128718, A129175.)

On December 12, 2013, Roger filed his will contest in *Khatri III*. At that time, Roger knew that the *Khatri I* case had divided the family assets; had found against Roger and in favor of Vidya regarding ownership of the gold bar, the Chartered Standard Bank account, and the Belmont residence; and had determined that mother had "great anger toward Roger for moving from Belmont and abdicating his duty to care for her." Roger's knowledge of these determinations is sufficient to infer that he brought his undue influence claims knowing that they lacked probable cause because the family assets had already been divided in *Khatri I* and there was a determination that Vidya had great anger toward Roger. Accordingly, Vidya's decision to leave her share of the family assets to Peter did not result in any "undue" benefit or inequity. (Welf. & Inst. Code, § 15610.70.) In addition, on September 9, 2015, when Roger's deposition was taken in *Khatri III*, Roger admitted that the reason he pursued the will contest against Peter was because he was not awarded the Belmont residence or the Chartered Standard Bank account in *Khatri I*. Further, on August 27, 2015, Roger denied Peter's requests to admit the testamentary documents were not invalid based on undue influence, which the *Khatri III* trial court later found warranted discovery sanctions because Roger lacked a good faith basis to deny the requests. We find that Peter has presented sufficient evidence to support a prima facie case that Roger pursued the will contest with malice and for an improper purpose. (*Cole, supra*, 206 Cal.App.4th at pp. 1113–1114.) Roger's declaration stating

27

he has no personal malice toward Peter is insufficient to defeat Peter's prima facie evidence of malice as a matter of law.

### B. Malice: Attorney Defendants

We also find that Peter has presented sufficient evidence to support a prima facie case of malice as to the attorney defendants. The attorney defendants have represented Roger since as early as 2003 when *Khatri I* was filed. Thus, they too were aware of the *Khatri I* order and findings dividing the family partnership and other assets and determining that Vidya had great anger toward Roger. Nonetheless, they filed the will contest on Roger's behalf, asserting, among other claims, that Vidya's testamentary documents were invalid based upon undue influence. Further, on August 27, 2015, attorney defendants denied Peter's requests to admit the testamentary documents were not invalid based on undue influence, which the *Khatri III* trial court later found warranted discovery sanctions because Roger lacked a good faith basis to deny the requests. Attorney defendants also represented Roger at his deposition in December 2015, when he admitted that he pursued the will contest because he was unhappy with the outcome of *Khatri I*. Nonetheless, the attorney defendants continued to pursue Roger's undue influence claims through a 16-day trial in October and November 2016. We find sufficient evidence to establish a prima facie case that based on the attorney defendants' decades-long representation of Roger, they knew of Vidya's desire to equally split the family assets; knew of the impact of *Khatri I*, which dissolved the family partnership and gave Roger a 50-percent share of the family's income properties; and knew of Vidya's animosity toward Roger for shirking his cultural duty to care for her. Thus, as the *Khatri III* court found, there was no evidence " 'that Vidya's efforts to give Peter a share of the family wealth equal to that already conferred on Roger

28

by giving Peter 100% of Vidya's share of the estate constituted an undue benefit.' "

The attorney defendants each submitted declarations in support of their anti-SLAPP motion stating that they bore no malice toward Peter or his wife, Kokila, and that none of their actions in the underlying will contest was done with any malice. The attorney defendants' declarations do not defeat Peter's prima facie case of malice as a matter of law. "Since parties rarely admit improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.) As discussed *ante*, malice may be inferred from evidence of a *knowing* lack of probable cause. (*Cole, supra*, 206 Cal.App.4th at pp. 1113–1114.)

## V. *Kokila as Individual Plaintiff*

Roger's will contest named Peter individually and as a trustee of the Pradeep K. Khatri and Kokila Pradeep Khatri 2007 Trust Agreement. However, it only named Peter's wife, Kokila, in her capacity as trustee. Roger and the attorney defendants each argued in their anti-SLAPP motions that because Kokila was not named in her individual capacity in the underlying will contest she could not maintain a malicious prosecution action in her individual capacity. The trial court granted Roger's anti-SLAPP motion as to Kokila only. However, it denied the attorney defendants' motion in its entirety. The record does not provide any basis for the trial court's inconsistent findings regarding whether Kokila can sue Roger for malicious prosecution in her individual capacity. Neither Peter nor Kokila appealed from the partial grant of Roger's anti-SLAPP motion as to Kokila.

The attorney defendants argue that Kokila's malicious prosecution cause of action against them must be dismissed because Roger did not sue

29

Kokila individually. (*Zamos, supra*, 32 Cal.4th at pp. 965–966 [element of malicious prosecution is a legal termination of underlying lawsuit in plaintiff's favor].) Peter responds that Kokila was injured in both her individual and her trustee capacities and that defendants fail to cite authority that Kokila cannot sue in her personal capacity. The attorney defendants do not cite a case directly deciding whether a person who was sued in an underlying lawsuit as a trustee only may later maintain a malicious prosecution action in the person's individual capacity. However, they do cite *Zamos* for the general rule that an element of malicious prosecution is a legal termination of the underlying lawsuit in plaintiff's favor. Peter also states that the issue can be remedied by amending the complaint to allege that Kokila seeks relief in her capacity as a trustee.

We find that because an element of malicious prosecution is that there was a legal termination of an underlying lawsuit in plaintiff's favor, Kokila has not shown a likelihood of prevailing on her malicious prosecution claim as an individual. (*Zamos, supra*, 32 Cal.4th at pp. 965–966; *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 9–14 [affirms granting of anti-SLAPP motion filed in malicious prosecution action because malicious prosecution plaintiff was not a party to prior litigation and could not establish threshold requirement that the underlying action was asserted against him].) Accordingly, we reverse the trial court's ruling on the attorney defendants' anti-SLAPP motion only to the limited extent that the motion should be granted as to the claim of Kokila as an individual. We leave it to the parties and the trial court on remand to determine whether the complaint may be amended to allege that Kokila is suing in her capacity as a trustee.

30

## DISPOSITION

The order granting in part and denying in part defendant Rajeshkumar Kantilal Khatri's special motion to strike is affirmed. The order denying defendants Fox, Shjeflo, Hartley & Babu, LLP, Walter Shjeflo, Sean Riley, and Michael Fox's special motion to strike is reversed only to the limited extent that the motion shall be granted as to the claim of plaintiff Kokila Pradeep Khatri as an individual. Peter shall recover his costs on appeal.


Jackson, P. J.


WE CONCUR:

Simons, J.
Chou, J.

A164829/*Khatri v. Fox, Shjeflo, Hartley & Babu, LLP*
A164883/*Khatri v. Khatri*

31